DUKES ET AL VS GOODALL ET AL..

Opinion delivered October 19, 1904.

1. *Indian Lands—Citizenship—Decrees Awarding—Due Process of Law.*

   The provisions of the Indian Appropriation Act, June 10, 1896, c. 398 (29 Stat. 321, 330) providing for trials of right to citizenship in the United States Court in Indian Territory are not unconstitutional as depriving members of Indian tribes of their property without due process of law, by reason of its failure to provide for notice of such cases upon such individual members.

2. *Indian Lands—Individual Indians not Tenants in Common—No Vested Rights.*

   The lands and funds of the Indian tribes in Indian Territory are public lands and public moneys in which the members of the tribes have no vested rights, nor are the lands held by the individual allottees as tenants in common.

3. *Citizenship in Indian Tribes—Parties—Notice to Nation Sufficient.*

   In actions brought by claimants to citizenship in the Indian tribes in the Indian Territory, the individual members have no such interest in the land and funds affected by the enrollment of additional citizens, as entitles them to be made parties to such action or have notice thereof.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Bill by G. W. Dukes and others against William Goodall and others. Decree in favor of defendants. Plaintiffs appeal. Affirmed.

(11)

*Mansfield, McMurray & Cornish* and *D. C. McCurtain,* for appellants,.

*Potter & Potter, Cruce & Cruce, Gilbert & Gilbert, Joseph P. 'Mullens,* and *Moseley & Smith,* for appellees.

CLAYTON, J.   This is a suit in equity brought by G. W. Dukes and 25 other Choctaw citizens who are named in the complaint, and D. H. Johnson and 25 other Chickasaw citizens also named in the complaint, and for the use of 20,000 other Choctaw and Chickasaw Indians not named because of the impracticability of naming so great a number, and of the great area over which they are distributed, against William Goodall and 10 others, whose names are set out in the complaint, and "all persons claiming to be members of the Choctaw or Chickasaw nations or tribes of Indians by virtue of alleged decrees of the United States Courts for the Central and Southern Districts of the Indian Territory, sitting, respectively, at South McAlester and Ardmore, and commonly known as 'court citizens.' "   It is alleged in the complaint "that all of the defendants are citizens of the United States, and are not members of the Choctaw or Chickasaw nations or tribes of Indians, but that said defendants are persons who claim to be members of said tribes by virtue of certain alleged decrees of the United States Court aforesaid; that said persons so claiming to be members of said tribes are approximately four thousand in number, and reside at various points upon the lands known as the 'Choctaw and Chickasaw Nations,' and are commonly known and designated as 'court claimants'; and plaintiffs allege that on account of the great number of defendants, and the great area over which they are distributed, it is utterly impracticable to make them all parties defendant by name, or to maintain separate actions against them, wherefore they bring this action against not only said defendants named above, but against all of said persons known as 'court claimants,'

so claiming to be members of said tribes by virtue of alleged decrees of said court." The complaint then alleges that the defendants are noncitizens of these nations, but claim to be members thereof by virtue of certain judgments obtained in the courts above named, adjudging them to be such; that the judgments were fraudulently obtained by defendants, and that the courts rendering them were without jurisdiction to try them, because the act of Congress authorizing such suits to be brought made no provision for notice upon individual Choctaw and Chickasaw Indians, whom the complaint alleges were the owners in common of the fee-simple title to the lands of those nations, and that the members of the tribes had no notice, actual or constructive, of the bringing of such suits; "that said alleged decrees are void upon their face; that all of said proceedings were contrary to the due course of legal procedure in force in the Indian Territory, and contrary to all those rules and principles which have been established by the jurisprudence of the United States of America for the protection and enforcement of private rights; that the only purpose of said proceedings is to bestow upon said defendants an equal, undivided interest in the afore-described lands, by placing their names upon a roll by which the division and allotment of said lands is to be made by the commission to the Five Civilized Tribes. * * * Plaintiffs further allege that the Choctaw Nation, as a political organization, owns no part of said lands, and has no interest therein cognizable in law or equity, and that the Chickasaw Nation likewise owns no part of said lands, and has no interest therein which can be set up either in law or in equity"; that the said defendants are threatening to enforce said decrees; and that the same are a cloud upon their title. They therefore pray that said decrees of the courts of the Central and Southern Districts be declared null and void, and that these defendants be enjoined, etc. A general demurrer to the complaint was filed and sustained. Exceptions were saved, and the case duly appealed.

Passing the question as to whether there is a misjoinder of parties defendant, we will first consider the constitutional question raised. It is that the act of Congress under which the United States Courts proceeded in the trial of the cases did not provide for notice in these cases to the plaintiffs in this case, and therefore the decrees were found without due process of law as provided by the Constitution. Upon this point it is sufficient to say that in the case of Stephens vs Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041, the Supreme Court of the United States, in passing upon all the constitutional phases of that act, say: "We hold the entire act to be constitutional." But this is not an appeal to review these decrees. It is an action seeking the original jurisdiction of the court on its equity side to set aside, first, decrees theretofore rendered by it and those of the United States Court for the Central District. These trials were had under the provisions of the Indian appropriation act of June 10, 1896, c. 398, 29 Stat. 321, 339, which, among other things, provided that in all cases involving the rights of citizenship which should have been tried by the Dawes Commission, or by the Indian tribunals, there should be a right of appeal to the United States District Court; meaning, as held by the Supreme Court of the United States in Stephens vs Cherokee Nation, supra, the United States Courts in the Indian Territory. It was further provided that the judgments and decrees of those courts pertaining to these cases should be final. There was no appeal allowed. Under the provisions of this act, they were tried de novo, which procedure the Supreme Court, in the same case, has clearly and unmistakably held to be proper and correct. The court at which these decrees were rendered had adjourned long before the bringing of this suit, the object of which is to vacate and set them aside. The theory upon which this case is brought is that the individual Indians of the Choctaw and Chickasaw Nations hold the title to their lands in common, and therefore were necessary parties to those suits, and should have been served

with notice; that an adjudication declaring these defendants to be citizens of these nations, if allowed to stand, gave them an interest in the lands.   In other words, that, by declaring them to be citizens, they were necessarily made tenants in common with the plaintiffs in all of their lands, and thus, by enlarging the number of tenants in common, lessening the individual share of each of the plaintiffs, and therefore the title being in them, and not having been made parties to the suits, they are not bound by the decree, and, as they granted to defendants a certain status, from which flowed an interest in their lands, and being fraudulent, as they allege, they have the right to directly attack them in the courts to show the fraud and remove the cloud thus cast upon their title.   If the legal effect of the proposition stated be admitted, the whole question must be decided upon the point as to whether these plaintiffs, in their individual capacity as tenants in common, possess such a title.   In the case of Stephens vs Cherokee Nation, supra, in which the question as to the title of these very lands, as well as all others of the Five Civilized Tribes was passed upon, the court say:   "The lands and moneys of these tribes are public lands and public moneys, and are not held in individual ownership."   And that court holds that no right in or to them was vested in these defendants or any of the "court claimants" by the decrees in their favor, establishing their rights of citizenship.   And however strong the treaties of 1855 and 1866 may seem to be to the contrary, this settles the whole controversy as to title.   And therefore we hold that the court below did not err in sustaining the demurrer and dismissing the bill.

Since this suit was brought, Congress has established a citizenship court, with full power to adjudicate all questions arising between these defendants and the Choctaw and Chickasaw Nations, and invested it with exclusive and final jurisdiction, the effect of which is to leave nothing of interest in the result of this suit, except the mere payment of costs.

The decree of the court for the Southern District is affirmed.

RAYMOND, C. J., and GILL, J., concur.